**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHERYL F., <br><br>         Plaintiff, <br><br>    v. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br>         Defendant. | Civ. A. No. 3:20-cv-16052 (GC) <br><br> **MEMORANDUM OPINION** |

**CASTNER, District Judge**

    **THIS MATTER** comes before the Court upon Cheryl F.'s ("Plaintiff") appeal from the final decision of the Commissioner of the Social Security Administration ("Defendant" or the "Commissioner"), denying Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C § 423, *et seq.* The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g), and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court affirms the Commissioner's decision to deny Plaintiff social security benefits.

## I.    BACKGROUND

### A.    Procedural History

    Plaintiff filed an application for disability insurance benefits on November 22, 2017, alleging disability beginning on March 2, 2017. (Administrative Record ("AR") 150-56, 178.) Plaintiff's claim was denied initially on February 9, 2018, and again upon reconsideration on April

9, 2018. (*Id.* at 64, 76.) An Administrative Law Judge ("ALJ") conducted an Administrative Hearing on August 23, 2019, following which the ALJ issued a decision on October 22, 2019, finding that Plaintiff was not disabled. (*Id.* at 28-52, 12-23.) The Appeals Council denied Plaintiff's request for review on September 10, 2020. (*Id.* at 5-6.) On November 13, 2020, Plaintiff filed an appeal to the District Court for the District of New Jersey. (*See* ECF No. 1.) The Commissioner filed the Administrative Record on May 15, 2021. (*See* ECF No. 8.) Plaintiff filed her moving brief on July 29, 2021, pursuant to Local Civil Rule 9.1. (*See* ECF No. 12.) The Commissioner filed opposition on September 13, 2021 (*see* ECF No. 17), and on September 28, 2021, Plaintiff filed her reply (*see* ECF No. 14). On April 11, 2022, this case was reassigned to the undersigned for all further proceedings. (*See* ECF No. 15.)

**B.      Factual Background**

Plaintiff is a fifty-five year-old female born on August 14, 1967. (AR 178.) She was unable to complete high school, though she is able to speak, read, and write English. (*Id.* at 183.) She served as a security guard at a high school from 2000 to 2014. (*Id.* at 34, 183.) Plaintiff subsequently worked as a deli clerk for two different food stores, from 2014 to 2017. (*Id.*) Plaintiff filed her initial claim for disability alleging an onset date beginning March 2, 2017. (*Id.* at 150-56.)

Plaintiff has received treatment for various conditions, including: cervical radiculopathy; cervical herniated disc; C5-6 disc herniation with left-sided radicular pain; degenerative disc disease with apparent left upper extremity radicular pain; other disc displacement at C4-C5 and C6-C7 level; cervical disc disease with myelopathy; LE varicosities; left arm neuropathy; hyperesthesia; occipital neuralgia; cervicalgia; chronic post-traumatic headache, not intractable; bilateral carpel tunnel syndrome; peripheral neuropathy at both upper extremities; Martin-Gruber

anastomosis from left median nerve to left ulnar nerve; low back pain; anxiety; depression; left-sided sciatica; spinal stenosis; and cervical root disorders. (*Id.* at 257, 263, 266, 268, 272, 287, 296, 303, 308, 313, 326, 329, 335, 338, 344, 350, 358, 363, 386, 390, 398, 408.) Plaintiff is prescribed alprazolam, prednisone, diazepam, gabapentin, cyclobenzaprine, and ciprodex for her conditions. (*Id.* at 242-45.)

At the Administrative Hearing, conducted on August 23, 2019, Plaintiff's counsel indicated that Plaintiff has the following impairments: cervical disc disease, cervical radiculopathy, left carpal tunnel syndrome, peripheral neuropathy, anxiety, depression, and headaches, which are secondary to the cervical conditions. (*Id.* at 32.) Plaintiff also testified that she has varicose veins in her right leg, and sciatica on her left side. (*Id.* at 35.) At the Hearing, Plaintiff's counsel argued that Plaintiff had aged into the category of an individual approaching advanced age six months following her alleged onset date, so "based on her physical and mental limitations, she[ would] be unable to do anything more than unskilled sedentary work, if that. And because of that fact, the medical vocational guidelines would implicate a finding of disability." (*Id.* at 32-33.)

Plaintiff testified that she is unable to stand for forty (40) hours per week, and that she could only stand or sit for short periods of time. (*Id.* at 35.) She maintained that she is only able to walk for five (5) minutes at a time, and only able to sit for twenty (20) minutes at a time. (*Id.* at 37-38.) She stated that she has limited mobility in her neck, such that she at times requires her husband or son to drive for her. (*Id.* at 36.) Plaintiff testified that her husband assists her with some daily activities, like doing dishes and getting groceries. (*Id.* at 38.) She stated that in terms of assistance with hygienic or personal needs, she only occasionally requires assistance with getting in and out of the shower because she had previously broken her ankle, and was concerned about sustaining an additional injury. (*Id.* at 39.) She also testified that she began experiencing

anxiety after her son's suicide attempt, and that she is prescribed anti-anxiety medication to alleviate her symptoms. (*Id.* at 41-42.) Plaintiff stated that she has some trouble remembering things, and trouble sleeping. (*Id.* at 43-44.) The ALJ inquired whether Plaintiff had been prescribed the brace she was wearing on her left hand, and Plaintiff replied that her doctor had recommended the brace for her carpel tunnel syndrome. (*Id.* at 46.) Plaintiff testified that she is right-handed. (*Id.* at 47.)

The ALJ engaged the expertise of Vocational Expert (the "VE"), Mary Anderson, who testified that there exists sufficient work available for Plaintiff at the light work[1] level with restrictions[2] related to her past work as a security guard in the form of: storage facility rental clerk,

---

[1] The Social Security Administration "determine[s] the physical exertion requirements of work in the national economy" by "classify[ing] jobs as sedentary, light, medium, heavy, and very heavy." Accordingly, "light work"

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[2] The ALJ posed the hypothetical restrictions to the VE as follows:

> Let us assume a person same age, education, work experience as [Plaintiff]. Let us assume that this individual is restricted to light work. Occasional pushing and or pulling with the upper extremities, occasional climbing of ramps and stairs, never climbing ladders, ropes, and scaffolds. Let's say occasional balancing, stooping, kneeling, crouching, but never crawling. Frequent reaching overhead with the upper extremities, frequent handling, feeling, and

[Dictionary of Occupational Titles ("DOT")] Code 295.367-026; parking lot cashier, DOT Code 211.462-010; and information clerk, DOT Code 237.367-018.  (*Id.* at 49.)  The ALJ solicited testimony that, with the same restrictions, Plaintiff has no past relevant work transferable at the sedentary level.[3]  (*Id.* at 50.)  The VE testified, however, that Plaintiff would be able to perform other sedentary work—in the form of election clerk, DOT Code 205.367-030; address clerk, DOT Code 209.587-010; and call out operator, DOT Code 237.367-014—and that these positions are sufficiently available in the national economy.  (*Id.* at 51.)

### C.     The ALJ's Decision

On October 22, 2019, the ALJ issued his decision finding that Plaintiff is not disabled.  (*Id.* at 12-23.)  The ALJ found that Plaintiff met the insured status requirements under the Social Security Act through December 31, 2021.  (*Id.* at 14.)  The ALJ then set forth the Social Security Administration's five-step sequential process for determining whether an individual is disabled.  (*Id.* at 13-14.)  At step one of the analysis, the ALJ found that Plaintiff had not engaged in

---

> fingering.  Handling, feeling, and fingering with the left upper extremity, which is the non-dominant hand.  Must avoid concentrated exposure to extreme cold and hazards, such as machinery and heights, and let's also add that the individual is restricted to work with no more than a moderate noise level.

(AR 48-49.)

[3] According to the Social Security Administration, "sedentary work"

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

substantial gainful activity[4] since March 2, 2017, the alleged disability onset date. (*Id.* at 14.) At step two of the analysis, the ALJ found that Plaintiff had the following severe impairments: cervical disc disease, cervical radiculopathy, left carpal tunnel syndrome, and peripheral neuropathy in the upper extremities. (*Id.*) The ALJ found the following impairments non-severe: varicose veins, depression, and anxiety. (*Id.* at 14-15.)

At step three, the ALJ determined, after a comprehensive examination of Plaintiff's medical conditions, that none of Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter, "Appendix 1"). (*Id.* at 16.) The ALJ next found that Plaintiff possessed the residual functional capacity ("RFC") to perform light work with detailed limitations.[5] (*Id.*) At step four, the ALJ found Plaintiff incapable of performing past relevant work. (*Id.* at 20.) At step five, relying on the testimony of the VE, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform considering her age, education, work experience, and RFC, such as storage facility rental clerk, parking lot cashier, and information

---

[4] "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if [she] do[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* § (a). "Gainful work activity is work activity that the claimant do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § (b).

[5] The only additional limitation to those contained in the ALJ's original question to the VE is that Plaintiff "can frequently turn the neck up and down and side to side." (AR 16.) In addition to the ALJ's original statement of itemized restrictions, *supra* n.4, the ALJ solicited separate testimony from the VE that "if we were to add that [Plaintiff] can frequently turn the neck up and down and side to side," in other words "frequent turning of the neck," that this addition would not impact Plaintiff's ability to perform the light work jobs proposed by the VE, which she testified are sufficiently available in the national economy. (*Id.* at 49-50.)

clerk. (*Id.* at 21-22.) The ALJ, accordingly, found that Plaintiff had not been disabled from March 2, 2017, through the date of the decision. (*Id.* at 22.)

## II.    LEGAL STANDARD

### A.    Disability Determination

An individual is "disabled" and therefore eligible for disability insurance benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The individual's impairment must be severe to the point that the individual cannot engage in his previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A); *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner employs a five-step sequential evaluation process for disability claims. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof for the first four steps of the analysis, and the burden shifts to the Commissioner for the fifth step. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007); *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

First, a claimant must not have engaged in substantial gainful activity since the alleged disability onset date. 20 C.F.R. § 404.1520(a)(4)(i), (b). Second, the Commissioner considers "the medical severity of [the claimant's] impairment(s)." *Id.* § 404.1520(a)(4)(ii). The claimant must have a "medically determinable impairment" or combination of impairments severe enough to

limit the claimant's ability to perform basic work activities for a continuous period of at least twelve months. *Id.*; *id.* § 404.1509. The claimant bears the burden of establishing the first two requirements, and failure to satisfy either automatically results in denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If the claimant satisfies her burden at steps one and two, she proceeds to the third step. At step three, the Commissioner considers the "medical severity of [the claimant's] impairment(s)." *Id.* § 404.1520(a)(4)(iii). The impairment or impairments must meet or equal a listing in Appendix 1 of C.F.R. Part 404, Subpart P. *Id.* § 404.1520(d). The impairment or impairments are "medically equivalent to a listed impairment . . . if [they are] at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 404.1526(a). If the claimant is able to make a sufficient showing at step three, she is deemed disabled. *Id.* § 404.1520(a)(iii).

However, if the claimant fails to make a sufficient showing at the third step, the analysis proceeds to an evaluation of the claimant's RFC and past relevant work at the fourth step. *Id.* § 404.1520(a)(4)(iv). RFC is the most the claimant can do in a work setting despite her limitations. *Id.* § 404.1545(a)(1). The Commissioner "assess[es] [the claimant's] residual functional capacity based on all the relevant evidence in [her] case record," and "consider[s] all of [the claimant's] medically determinable impairments," including ones that are not "severe" pursuant to §§ 4041520(c), 404.1521, and 404.1523. *Id.* § 404.1545(a)(1)-(3). The Commissioner assesses RFC based on "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3). Past relevant work is "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). "The claimant bears the burden of demonstrating an inability to return to [her] past relevant work." *Plummer*, 186 F.3d at 428 (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)).

If the claimant is incapable of performing her past relevant work, the analysis proceeds to the fifth and final step. *See id.* § 404.1520(a)(4)(iv)-(v); *Plummer*, 186 F.3d at 428. At step five, the claimant must be unable to adjust to other work in light of her RFC, age, education, and work experience to be considered disabled. *See id.* § 404.1520(a)(4)(v), (g). Before denying a claim at step five, the Commissioner must show that the claimant is capable of other work existing "in significant numbers in the national economy." *Id.* § 404.1560(c)(2); *see also Poulos*, 474 F.3d at 92.

### B.   Standard of Review

District courts may "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the decision, the court determines whether the ALJ's findings are supported by substantial evidence. *See id.*; *see also Poulos*, 474 F.3d at 91. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (internal quotation marks and citation omitted).

The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Thus, this limitation on a reviewing court's discretion applies "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429,

431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

## III.   DISCUSSION

Based on the Court's review of the ALJ's decision (*see* AR 12-22), and the Administrative Record submitted by the Commissioner (*see generally* AR), the Court finds good cause to affirm the Commissioner's finding that Plaintiff is not disabled.  Notably, in reaching a decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence. *Cotter*, 642 F.2d at 706.  Here, the ALJ provided sufficient reasoning for the Court to determine that his findings are supported by substantial evidence.

In support of her appeal, Plaintiff advances three principal arguments that the ALJ's decision is not supported by substantial evidence: (1) that the ALJ "failed to consider [] Plaintiff's medically determinable impairment of headaches" "in his [s]tep [t]wo findings, as well as the RFC[,]" (*see* Pl.'s Moving Br. 12-14, ECF No. 12); (2) that the ALJ "erred in finding Plaintiff's mental health non-severe at [s]tep [t]wo and further compounded that error by failing to incorporate limitations consistent with the same in the RFC," (*see id.* at 15-18); and (3) that the ALJ "erred in his treatment of the medical opinion evidence[,]" (*see id.* at 18-21).  The Court will address these arguments in turn.

### A.   Plaintiff's Cervical Headaches at Step Two and in the RFC

Plaintiff argues that the ALJ erred by failing to consider her headaches as a separate medically determinable impairment at step two, and later by failing to include a corresponding limitation in the RFC.  (Pl.'s Moving Br. 12-14.)  Plaintiff must demonstrate the existence of a

medically determinable impairment, however, by objective medical evidence. Under federal

regulations, a medically determinable impairment

> must result from anatomical, physiological, or psychological
> abnormalities that can be shown by medically acceptable clinical
> and laboratory diagnostic techniques. Therefore, a physical or
> mental impairment must be established by objective medical
> evidence from an acceptable medical source. **[The Social Security
> Administration] will not use [a claimant's] statement of
> symptoms, a diagnosis, or a medical opinion to establish the
> existence of an impairment(s).** After [the Social Security
> Administration] establishes if [the claimant] has a medically
> determinable impairment(s), then [its officials] determine whether
> [the claimant's] impairment(s) is severe.

20 C.F.R. § 404.1521 (emphasis added); *see* 42 U.S.C. § 423(d)(3). "Objective medical evidence

means signs,[6] laboratory findings,[7] or both." 20 C.F.R. § 404.1502(f).

---

[6] According to the regulations, "signs"

> means one or more anatomical, physiological, or psychological
> abnormalities that can be observed, apart from [the claimant's]
> statements (symptoms). Signs must be shown by medically
> acceptable clinical diagnostic techniques. Psychiatric signs are
> medically demonstrable phenomena that indicate specific
> psychological abnormalities, e.g., abnormalities of behavior, mood,
> thought, memory, orientation, development, or perception, and must
> also be shown by observable facts that can be medically described
> and evaluated.

20 C.F.R. § 404.1502(g).

[7] The regulations define "laboratory findings" as

> [o]ne or more anatomical, physiological, or psychological
> phenomena that can be shown by the use of medically acceptable
> laboratory diagnostic techniques. Diagnostic techniques include
> chemical tests (such as blood tests), electrophysiological studies
> (such as electrocardiograms and electroencephalograms), medical
> imaging (such as X-rays), and psychological tests.

20 C.F.R. § 404.1502(c).

Plaintiff asserts that "there are multiple mentions of [] Plaintiff's headache conditions" reflected in the Administrative Record, but all of Plaintiff's citations to these mentions are Plaintiff's own statements recounting her symptoms, either to medical professionals or during the Administrative Hearing. (*See* Pl.'s Moving Br. 14 (citing "a consultative examination with Dr. Srinivans Paviluri, [M.D.]" (AR 338); Plaintiff's "report[ of] issues with her memory due to headaches" (*id.* at 193); and Plaintiff's testimony at the Administrative Hearing that she "ha[s] bad days and worse days when it comes to her headaches" (*id.* at 37)).) The Administrative Record does not include any signs or laboratory findings that support Plaintiff's headaches as an independent impairment, but it does include objective evidence of her cervical disc disease.

The ALJ found Plaintiff's cervical spinal disease to be a severe impairment at step two. (*Id.* at 14.) The record reflects that Dr. Paviluri reported an assessment for "chronic post-traumatic headache" (see AR 338, 350), and Dr. Noah Gilson, M.D., recorded an assessment of "chronic tension-type headaches," and added the explanatory note that "this is due to [Plaintiff's] cervical spinal disease" (*see id.* at 387, 390, 398, 417, 419). Indeed, the regulations instruct that the Social Security Administration "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment," 20 C.F.R. § 404.1521, so Plaintiff's doctors' assessments are not enough. The only record evidence underlying Plaintiff's headaches arises from Plaintiff's reports of her symptoms to various sources—such evidence is not available in the current record in the form of signs or laboratory findings, *i.e.*, symptoms perceived by a medical professional or measured by a medical instrument. Therefore, the ALJ acted within his discretion in declining to credit Plaintiff's headaches as an individual severe impairment.

Plaintiff also argues that the ALJ failed to consider Plaintiff's headaches in structuring the RFC. (*See* Pl.'s Moving Br. 12.) The Court's review of the ALJ's decision leads to the conclusion

that the ALJ explicitly considered Plaintiff's headaches in structuring the RFC. The ALJ explained that in constructing Plaintiff's RFC, he "considered all symptoms[8] and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (AR 16.) As such, the ALJ found that "although the claimant experienced some limitations, the assessed [RFC] encompasses all the limitations that are supported by the record as a whole, those to which she testified, and even includes some for which there were no or very minimal clinical findings, for example headaches." (*Id.* at 20.) The ALJ's RFC determination contained a corresponding limitation that Plaintiff "is restricted to work with no more than a moderate noise level." (*Id.* at 16.) But, as in the instant matter,

> [o]ther than Plaintiff's self-reporting that she experiences migraines, which her physicians have recorded in their records, Plaintiff does not cite to one medical record that reveals any office visit specific to her migraines, or documents how her migraine headaches impact her functioning. The ALJ cannot be faulted for not considering Plaintiff's migraine headaches in the RFC assessment because the only record of Plaintiff's migraines is Plaintiff's conclusory statement that she experiences them.

*Ungemach v. Comm'r of Soc. Sec.*, No. 18-4987, 2019 WL 3024858, at *7 (D.N.J. July 11, 2019) (citing *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005)). Even though the only evidence of record is, effectively, Plaintiff's reports of her symptoms, the ALJ nonetheless accounted for Plaintiff's headaches in constructing the RFC. For these reasons, the ALJ's RFC determination, which includes a provision accounting for Plaintiff's headaches, is supported by the foregoing substantial evidence.

### B.    Plaintiff's Mental Health Impairments at Step Two and in the RFC

---

[8] "Symptoms means [the claimant's] own description of [his or her] physical or mental impairment." 20 C.F.R. § 404.1502(i).

Next, Plaintiff argues that the ALJ erred by finding Plaintiff's mental health impairments of anxiety and depression to be non-severe at step two, and that the ALJ failed to "incorporate any limitations consistent with Plaintiff's mental impairments, memory, or concentration issues" in the RFC. (*See* Pl.'s Moving Br. 17.)  At step two, the ALJ found that "[t]he claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."  (AR 15.)

The ALJ is instructed to use the "special technique" designed for the evaluation of mental impairments, outlined in the regulations, to first determine whether the claimant has a medically determinable mental impairment.  20 C.F.R. § 404.1520a(b)(1).  To do this, the ALJ will "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings."  *Id.* (citing 20 C.F.R. § 404.1521).  If this evaluation shows that the claimant has a medically determinable mental impairment, the ALJ must "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [the] findings in accordance with paragraph (e) of this section," *see id.*, and "incorporate the pertinent findings and conclusions based on the technique" into the written decision, *see id.* § (e)(4).  "The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)" and "must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."  *Id.*

According to paragraph (c), there are "four broad functional areas in which [the ALJ] will rate the degree of [the claimant's] functional limitation: [u]nderstand, remember, or apply

information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* § (c)(3) (citing 12.00E of the Listing of Impairments in Appendix 1).

At step two, the ALJ examined Plaintiff's mental conditions in accordance with the mechanism designed for evaluation of mental impairments outlined by the regulations. The ALJ acknowledged Plaintiff's reports of "difficulty with memory and concentration," but found that "[t]he evidence fails to show the claimant has any deficits with short or long-term memory." (AR 15); *see* 20 C.F.R. § 404.1520a(c)(3). He found that Plaintiff has no trouble "interact[ing] with others," which is supported by Plaintiff's function report, in which she avers that she does not have any problems getting along with family, friends, neighbors, or others, and that she gets along "well" with authority figures. (AR 15; *see id.* at 195-96); *see* 20 C.F.R. § 404.1520a(c)(3). The ALJ found that Plaintiff has a "mild" limitation in the functional area of "concentrating, persisting, or maintaining pace," because she "reported difficulty with memory and concentration," but reasoned that "the medical records do not show that the claimant had any difficulty sustaining attention or difficulty focusing." (AR 15; *see id.* at 195); *see* 20 C.F.R. § 404.1520a(c)(3). Lastly, the ALJ found that Plaintiff had no limitation concerning the functional category of "adapt[ing] or manag[ing] oneself." (AR 15.) The ALJ supported his determination with his reasoning,

> [Dr. Gross] notes the claimant reported feeling much better with anxiety. Overall, there is no evidence showing the claimant has any issues with short-term or long-term memory or any difficulty with concentration. Additionally, she is able to take care of her personal needs. She can manage her own money. She cooks and performs household tasks and drives locally. She is not under any formal psychiatric treatment from a specialist and she is only prescribed Xanax by Dr. Gross.

(*Id.* at 15, 358-71.) Notably, the ALJ engages with the factors outlined by the regulations, and cites the conflicting evidence in Dr. Gross's notes and Plaintiff's testimony at the Administrative Hearing, as his basis for rejecting Plaintiff's anxiety and depression as severe impairments. At the

conclusion of the step two analysis, the ALJ determined that, "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas, they are nonsevere." (*Id.* at 15); *see* 20 C.F.R. § 404.1520a(d)(1) ("If [the ALJ] rate[s] the degrees of [the claimant's] limitation as 'none' or 'mild,' [he or she] will generally conclude that [the claimant's] impairment(s) is not severe[.]").

Plaintiff argues that this step two determination is in error because the ALJ cites to only "one medical record to substantiate this finding." (*See* Pl.'s Moving Br. 16.)  However, based on this Court's review of the Administrative Record, this is the only document of "objective medical evidence from an acceptable medical source" in the entire Administrative Record (*see* AR 358-71).  The ALJ exhaustively considered the evidence of record, both medical and otherwise, supportive of Plaintiff's complaints of anxiety and depression.  Here, Plaintiff's "subjective allegations of her limitations and complaints of pain were not fully credible in light of the medical evidence and [Plaintiff's] self-reported activities of daily living." *Seaman v. Soc. Sec. Admin.*, 321 F. App'x 134, 135 (3d Cir. 2009) (citing *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999)). The ALJ's findings regarding Plaintiff's anxiety and depression, singularly or in combination with one another, are supported by substantial evidence.

Next, Plaintiff argues that, even if the ALJ's finding of non-severity at step two was proper, the ALJ failed to include any limitations reflecting his finding that Plaintiff has a mild limitation in her ability to concentrate, persist, and maintain pace in his hypothetical to the VE. (*See* Pl.'s Moving Br. 17.)  However, as explained earlier, if the ALJ finds that the degree of Plaintiff's limitation is "none" or "mild," he will generally conclude that it is nonsevere.  20 C.F.R. § 404.1520a(d)(1).  The regulations instruct that "[a]n impairment or combination of impairments

is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic

work activities." *Id.* § 404.1522(a).  Further,

> [t]his Circuit does not require an ALJ to submit to the VE every impairment *alleged* by a claimant.  Rather, the ALJ is only required to submit credibly established limitations.  **Where, as here, a limitation is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE.** While the record in this case is not conclusive as to whether [the claimant] had short-term memory or task problem limitations, there is substantial evidence to support a finding that she did not— namely, her lack of demonstrated problems with activities of daily living and her ability to drive.  The ALJ therefore appropriately exercised his discretion when determining which limitations to submit to the VE.

*Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (quoting *Rutherford*, 399 F.3d at 554) (first

emphasis in original) (second emphasis added) (internal punctuation omitted).  The *Zirnksak*

analysis is directly on point here.  The hypothetical posed to the VE was not deficient because the

ALJ exercised his discretion in declining to incorporate a single limitation, accorded the severity

rating of mild because it is based solely upon Plaintiff's subjective symptoms, contradicted by

other evidence of record.  The Court will affirm the ALJ's findings concerning Plaintiff's mental

impairments.

**C.      The ALJ's Examination of the Medical Opinion Evidence**

Finally, Plaintiff argues that the ALJ failed to accord proper weight to the opinions of her

treating physician, Dr. Russell Gross, M.D.  (*See* Pl.'s Moving Br. 18-21.)  In response, the

Commissioner emphasizes that

> [b]ecause this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record.  Significantly, the new regulations more specifically define "medical opinion" and wholly eliminate what has been referred to as the "treating source rule."  By eliminating the treating

> source rule and making other prominent changes for claims filed on
> or after March 27, 2017, the new regulations alter standards that the
> agency and reviewing courts have applied for many years.

(Def.'s Opp'n Br. 17-18, ECF No. 13 (citing Revisions to Rules Regarding the Evaluation of

Medical Evid., 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg.

15132-01 (Mar. 27, 2017)); 20 C.F.R. § 404.1513(a)(2); 20 C.F.R. § 404.1520c).)  After March

27, 2017, a "medical opinion" is defined as "a statement from a medical source about what you

can still do despite your impairment(s) and whether you have one or more impairment-related

limitations or restrictions in the following abilities." *Compare* 20 C.F.R. § 404.1513(a)(2) (listing

the following categories of abilities: "ability to perform physical demands of work activities," *id.*

§ (a)(2)(i); "ability to perform mental demands of work activities," *id.* § (a)(2)(ii); "ability to

perform other demands of work," *id.* § (a)(2)(iii); and "ability to adapt to environmental

conditions," *id.* § (a)(2)(iv)) *with* 20 C.F.R. § 404.1527(a)(1) (defining "medical opinion" for

applications filed prior to Mar. 27, 2017).

The "treating physician rule" or "treating source rule" originates from the prior regulatory

scheme, under which, if the ALJ found that "a treating source's medical opinion on the issue(s) of

the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the] case record, [the ALJ] will give it controlling weight."    20 C.F.R.

§ 404.1527(c)(2).  Plaintiff cites to numerous decisions by the Court of Appeals for the Third

Circuit appropriately applying this rule.  (*See* Pl.'s Moving Br. 18 (collecting cases).)  The new

regulatory scheme instructs that the ALJ "will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative finding(s),

including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "The most

important factors [the ALJ will] consider when [he] evaluates the persuasiveness of medical opinions and prior administrative medical findings are supportability[9] and consistency[10]." *Id.* (citing *id.* § (c)(1)-(2)). The other factors investigate the physician's relationship with the claimant (considering the length, purpose, and extent of the treatment relationship, whether the medical professional conducted examinations, and the frequency of any examinations), *id.* § (c)(3)(i)-(v); whether the medical professional is a specialist in his or her field, *id.* § (c)(4); and other miscellaneous factors, *id.* § (c)(5).

In Reply, Plaintiff persists that the ALJ committed error because he "ignores substantial portions of the medical record and Dr. Gross's opinions in favor of his own determinations." (Pl.'s Reply Br. 7, ECF No. 14.) The regulations state, however, that the ALJ is "not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). The ALJ engages with the treatment records of Dr. Gross, and explains the supportability and consistency of the objective medical evidence underlying his opinion. (*See* AR 19-20 (explaining his reasoning, based in Dr. Gross's treatment notes, in finding that "Dr. Gross'[s] opinion is not persuasive as the limitations contained in this medical source statement exceed[] what is reflected in the medical evidence").)

"Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, *Fargnoli*, 247 F.3d 34, 42 (3d Cir. 2001), 'there is no requirement that the ALJ discuss

---

[9] In considering the "supportability" of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[10] "The more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative filings will be." 20 C.F.R. § 404.1520c(c)(2).

in [his] opinion every tidbit of evidence included in the record,' *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004)." *Diciano v. Comm'r of Soc. Sec.*, No. 18-17383, 2019 WL 6696523, at *2 (D.N.J. Dec. 9, 2019) (affirming decision of ALJ).

Here, the ALJ thoroughly reviewed the medical evidence supportive of Dr. Gross's opinions, and distinguished the objective evidence from Dr. Gross's recollection of Plaintiff's subjective reporting of her symptoms, and from Dr. Gross's ultimate conclusions. The decision as to whether Plaintiff is disabled rests squarely with the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3). The ALJ's findings regarding Plaintiff's treating physician, Dr. Gross, are supported by substantial evidence under the regulatory structure for evaluation of claims filed after March 27, 2017.

Finally, Plaintiff avers that during the pendency of Plaintiff's claim, she turned fifty (50) years-old, and aged into the category of an individual closely approaching advanced age. (See Pl.'s Moving Br. 2 (citing AR 53).) She argues that

> [h]ad the ALJ properly considered the medical opinion of Dr. Gross, and incorporated limitations consistent with the same into the RFC, [] Plaintiff would have been limited to no more than sedentary work. With a limitation to sedentary unskilled work, and less than a high school education, [] Plaintiff would have been found disabled under the Medical Vocational Guidelines.

(Pl.'s Moving Br. 21.) The regulations do not support Plaintiff's conclusion. The regulations instruct that if a claimant is determined to have at least one severe, medically determinable impairment, *see* 20 C.F.R. §§ 404.1520(c), 404.1521 & 404.1523, is aged at least fifty-five (55) years old, *see* 20 C.F.R. § 404.1563, has no more than a limited education, *see id.* § 404.1564, and has no past relevant work experience, *see id.* § 404.1565, the claimant is disabled. *See* 20 C.F.R. 404.1562(b).

The ALJ found that Plaintiff suffers from several medically determinable impairments (*see* AR 14), and that she has a limited education, (*see id.* at 21). At the time the ALJ's decision was published, Plaintiff was not of advanced age, but had aged into the category of closely approaching advanced age. *See* 20 C.F.R. § 404.1563(d) ("If [the claimant is] closely approaching advanced age (age 50-54), [the ALJ] will consider that [the claimant's] age along with a severe impairment(s) and limited work experience may seriously affect [the claimant's] ability to adjust to other work.") Most importantly, the regulation provides that Plaintiff must have "no past relevant work experience,"[11] *see* 20 C.F.R. 404.1562(b), which is not equivalent to a finding that Plaintiff is unable to perform past relevant work, *see id.* § 404.1520(f). Instead, past relevant work experience is a part of the ALJ's investigation into whether Plaintiff is able to make an adjustment to any other work in the national economy. *See id.* § (g).

Though the VE provided testimony at the Administrative Hearing that there existed no transferrable skills from Plaintiff's past work to the RFC at the sedentary level, (*see* AR 50), the ALJ ultimately did not find that Plaintiff was limited to sedentary work, but was capable of

---

[11] "Work experience" means

> skills and abilities [the claimant has] acquired through work she [has] done which show[s] the type of work [she] may be expected to do. Work you have already been able to do shows the kind of work you may be expected to do. [The ALJ] consider[s] that [the claimant's] work experience applies when it was done in the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity. . . . If [the claimant has] acquired skills through [her] past work, [the ALJ] consider[s her] to have these skills unless [she] cannot use them in other skilled or semi-skilled work that [she] can do now. If [she] cannot use [her] skills in other skilled or semi-skilled work, [the ALJ] will consider [the claimant's] work background the same as unskilled.

20 C.F.R. § 404.1565(a).

performing light work with restrictions—indeed, the ALJ discussed his colloquy with the VE regarding the potential that Plaintiff might perform sedentary work in his decision, (*see id.* at 22). He reasoned: "I note that I also discussed with the [VE] possible additional limitations that might exist were I to find more stringent limitations in the claimant's ability to function. However, I do not find these more stringent limitations to be applicable under the record." (*Id.*) The ALJ properly considered the medical opinions of Dr. Gross in accordance with the new regulatory guidance for evaluation of claims made after March 2017, and he properly incorporated Plaintiff's limitations arising from her impairments into the RFC. These considerations led the ALJ to conclude that Plaintiff is not disabled. This conclusion is supported by substantial evidence.

## IV.   **CONCLUSION**

For the foregoing reasons, and for good cause shown, the Commissioner's decision to deny Plaintiff benefits shall be affirmed. An appropriate Order follows.

**Dated**: November 22, 2022

GEORGETTE CASTNER
United States District Judge